**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
DR. ALAN SACERDOTE,

                                        Plaintiff,                          **24-CV-3129 (AT) (VF)**

                    -against-                                          **OPINION AND ORDER**

CAMMACK LARHETTE ADVISORS,

                                        Defendant.
----------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge.**

         Presently before the Court is a motion by non-party Jeffrey Levy ("Levy") and

Defendant Cammack LaRhette Advisors, LLC ("Cammack") for a protective order under

Federal Rules of Civil Procedure 30 and 45, terminating the deposition of Mr. Levy. ECF

No. 1. For the reasons stated herein, the motion is **DENIED**.

## BACKGROUND

         Plaintiff Alan Sacerdote ("Plaintiff") commenced the underlying action on

November 13, 2017, against the New York University ("NYU") Retirement Committee, its

individual members, NYU Langone Hospitals, and the NYU School of Medicine, alleging

that Defendants breached their fiduciary duties under the Employee Retirement Income

Security Act of 1974 ("ERISA"). See No. 17-CV-8834, ECF No. 1.[1] Plaintiff amended his

complaint on January 10, 2018, to add Cammack as a defendant in the underlying action.

See No. 17-CV-8834, ECF No. 105.

---

[1] Citations to "ECF" refer to documents on the electronic docket. Citations to documents
on the electronic docket in this case are not preceded by the case number. Citations to documents
on the electronic docket in the underlying litigation are preceded by the case number.

On February 8, 2024, Cammack sought an order in the underlying action precluding testimony on eight topics concerning Cammack's finances during the Rule 30(b)(6) deposition of Cammack. See No. 17-CV-8834, ECF Nos. 270, 275.

On March 29, 2024, while Cammack's motion for a protective order was pending before the Court, Mr. Levy, a former employee of Cammack, sat for a deposition taken by counsel for Plaintiff, Joel Rohlf. ECF No. 20 at 7:5. After various questions concerning Mr. Levy's employment history at Cammack, Mr. Rohlf asked Mr. Levy "[w]ho was in charge of Cammack LaRhette Advisors?" ECF No. 20 at 48:19-20. Mr. Levy's counsel, Charles Dyke, objected to the form of the question (see id. at 48:21-22), adding that he was "orally mov[ing] for a protective order" and seeking to adjourn the deposition so that he could file a motion with the Court. Id. at 49:2-7. In response, Mr. Rohlf asked: "How is that question bad faith, harassing, or otherwise abusive," id. at 49:11-21, an apparent reference to the standard under Federal Rule of Civil Procedure 30(d)(3)(A) for terminating a deposition. Mr. Dyke replied that the question "gets into the matters for examination that are set forth in [the] Rule 30(b)(6) deposition notice to Cammack which are the subject of a pending motion for a protective order" in the underlying action, adding that the question did not seek evidence "germane to the issues in the lawsuit." Id. at 49:14-21. Mr. Rohlf disagreed with the characterization that the question did not seek relevant evidence and added that if Mr. Dyke was "going to adjourn the deposition, this witness is coming back." Id. at 51:2-5. Mr. Dyke responded, "Well, for sure," and proposed that Mr. Rohlf take the questions "relating to those matters" that were the subject of the pending motion in the underlying case and "save[ ]" them "for another day or another time" once a decision was issued on the motion for a protective order. Id. at 51:6-15. Mr. Rohlf countered that Mr. Dyke's approach would not provide "a full record . . . [of] what questions are being asked" and added

that he would ask "all [his] questions" and counsel could "instruct the witness not to answer." <u>Id.</u> at 52:22-25, 53:2-5.

Mr. Dyke again indicated that he would "adjourn the deposition" pursuant to Rule 30(d)(3)(A). <u>Id.</u> at 54:19-22. Mr. Rohlf argued that Mr. Dyke could adjourn for bad faith, harassment or otherwise abusive practices, but that the rule did not allow an adjournment for relevancy, "which is [Mr. Dyke's] argument here." <u>Id.</u> at 54:23-25, 55:2-4. Mr. Dyke reiterated that Mr. Rohlf could "ask all of the other questions first so that [they] don't have to adjourn now," Mr. Rohlf could "make whatever record," and the parties could adjourn to engage in motion practice over the "other area of questioning" which was at issue in the then-pending motion for a protective order. <u>Id.</u> at 56:12-19. Mr. Rohlf responded that he would "ask the questions in the order [he] want[s] to ask them," and he would "ask all [his] questions" and Mr. Dyke would "take whatever actions" he deemed necessary. <u>Id.</u> at 56:23-25, 57:2-3. Mr. Dyke then adjourned the deposition, stating that an adjournment was appropriate because Mr. Rohlf intended to "ask additional questions relating to the matters for examination in [the] Rule 30(b)(6) notice of deposition to Cammack" that were the subject of the then-pending motion for a protective order. <u>Id.</u> at 57:9-21.

Mr. Rohlf and Mr. Dyke discussed whether it was necessary for Mr. Rohlf to make a record of his questions before Mr. Dyke could adjourn the deposition and move for a protective order. <u>Id.</u> at 57-59. Ultimately, because Mr. Rohlf did not agree to ask all of his questions concerning the disputed topic areas after asking his questions that concerned undisputed topics, Mr. Dyke "orally move[d] for a protective order" and ended Mr. Levy's deposition after 55 minutes of testimony. <u>Id.</u> at 60-61. Mr. Dyke stated that the parties would "definitely be back so

[that Mr. Rohlf] can ask all the other questions you have that don't get into these topics," but noted that the procedure was "wasteful and wildly inefficient." Id. at 60:17-24.

On April 10, 2024, Mr. Levy and Cammack filed a motion for a protective order, seeking to limit or terminate Mr. Levy's Rule 45 deposition. ECF No. 1. On April 17, 2024, the Court granted Cammack's motion for a protective order in the underlying case, concluding that Plaintiff could not ask about the eight disputed topic areas concerning Cammack's finances and assets during Cammack's Rule 30(b)(6) deposition, because Cammack's ability to pay a judgment was not relevant to a claim in the case. See No. 17-CV-8834, ECF No. 286.

On January 6, 2025, the Court issued an order directing the parties to address whether Mr. Levy's deposition should continue on topics unrelated to the eight topics covered by the April 17 protective order. ECF No. 17. On January 17, 2025, Mr. Levy filed a letter addressing the Court's order. ECF No. 18. Plaintiff filed a response on January 31, 2025. ECF No. 19.

## DISCUSSION

A. Legal Standard

Under Federal Rule of Civil Procedure Rule 30, "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). The party seeking to terminate a deposition "must show the examination 'is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses' the deponent or party." Crawford-Bey v. New York & Presbyterian Hosp., No. 08-CV-5454 (RJS) (KNF), 2010 WL 2143673, at *4 (S.D.N.Y. May 26, 2010) (quoting Fed. R. Civ. P. 30(d)(3)(A)). The "power [to limit a deposition] has been and should be exercised sparingly lest it cripple the broad discovery intended by the Federal Rules." Schwartz

v. Broad. Music, 16 F.R.D. 31, 33 (S.D.N.Y. 1954); see also Main St. Am. Assurance Co. v. Savalle, No. 18-CV-02073 (JCH), 2019 WL 4744932, at *4 (D. Conn. Sept. 30, 2019) (noting that "the power to limit or halt depositions is sparingly used").

Courts have found a question to have been asked in bad faith or to unreasonably annoy, embarrass, or oppress a deponent where the inquiry encroaches on personal information that is unrelated to the claims in the case. See e.g., Baines v. City of New York, No. 10-CV-9545 (JMF) (JLC), 2016 WL 3042787, at *5 (S.D.N.Y. May 27, 2016) ("Questions that delve into a deponent's sexual history or other elements of his or her personal life that have no possible relevance to the case may be the subject of a successful Rule 30(d)(3) motion."); Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A., No. 9-CV-601 (ADS) (AKT), 2009 WL 3757054, at *10-11 (E.D.N.Y. Nov. 9, 2009) (holding that personal questions concerning deponent's recent traffic accident asked at a deposition in a commercial dispute "borders on harassment of the witness[]" and fall within the scope of Rule 30(d)(3)); Pressley v. City of New York, No. 11-CV-3234 (PKC) (RER), 2013 WL 6028316, at *2 (E.D.N.Y. Nov. 13, 2013) (holding that deponent did not have to answer personal question about who she resides with in an employment-discrimination suit because the question did "not address any claim or defense in the case, the witness is not a party, no good faith basis for asking this question has been provided, and the question is not designed to lead to admissible evidence"); Van Stelton v. Van Stelton, No. 11-CV-4045 (MWB), 2013 WL 5574566, at *17 (N.D. Iowa Oct. 9, 2013) (noting that "questions about personal or confidential matters," such as a deponent's "medical history, sex life or financial condition" could constitute bad faith, unreasonable annoyance, embarrassment or oppression "if such matters had no possible relevance to the case").

5

Asking a deponent "irrelevant questions," however, "does not, by itself, constitute sufficient annoyance or oppressive conduct contemplated by Federal Rule of Civil Procedure 30[.]" <u>Antolini</u>, 2021 WL 5411176, at *7 (internal quotation marks omitted); <u>see also</u> <u>Padilla v. Sheldon Rabin, M.D., P.C.</u>, No. 15-CV-1708 (JBW), 2016 WL 11472747, at *1-2 (E.D.N.Y. Feb. 17, 2016) (distinguishing between harassing personal questions which merit a protective order under Rule 30(d)(3) and irrelevant questions); <u>Baines</u>, 2016 WL 3042787, at *3 (noting that "irrelevance is typically not a valid basis for refusing to answer a deposition question"); <u>Mirlis v. Greer</u>, 249 F. Supp. 3d 611, 614 (D. Conn. 2017) ("It is improper to instruct a witness not to answer a question on the basis of relevancy.") (internal quotation marks omitted).

Additionally, Federal Rule of Civil Procedure 45 governs discovery subpoenas issued to non-parties. <u>DoorDash, Inc. v. City of New York</u>, No. 21-CV-7564 (GHW) (GS), 2024 WL 4589891, at *3 (S.D.N.Y. Oct. 25, 2024). Under that rule, "'[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . subjects a person to undue burden.'" <u>Somaxon Pharms., Inc. v. Actavis Elizabeth LLC</u>, No. 22-MC-162 (KPF), 2022 WL 3577904, at *2 (S.D.N.Y. Aug. 18, 2022) (quoting Fed. R. Civ. P. 45(d)(3)(A)). The purpose of Rule 45 is to protect non-party deponents "from being subjected to excessive discovery burdens in litigation in which they have little or no interest." <u>Wultz v. Bank of China Ltd.</u>, 293 F.R.D. 677, 679 (S.D.N.Y. 2013) (quoting <u>In re Edelman</u>, 295 F.3d 171, 178 (2d Cir. 2002)) (finding an undue burden where "in order to produce a knowledgeable designee for the deposition, [non-party corporation] would presumably have to send an employee from Israel to New York" to be deposed). "[A]ssessing undue burden" in the context of a Rule 45 subpoena is "'a highly case specific inquiry.'" <u>DoorDash, Inc.</u>, 2024 WL 4589891, at *15 (quoting <u>In re Novartis & Par Antitrust Litig.</u>, No. 18-CV-4361 (AKH), 2020 WL 3317203, at *5 (S.D.N.Y.

6

June 18, 2020)). "The movant bears the burden of persuasion in a motion to quash a non-party subpoena." Hughes v. Twenty-First Century Fox, Inc., 327 F.R.D. 55, 57 (S.D.N.Y. 2018).

Lastly, under Federal Rule of Civil Procedure 26(c), "[a] party or any person from whom discovery is sought may move for a protective order," which the Court may issue for good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Ordinarily, good cause exists when a party shows that disclosure will result in a clearly defined, specific and serious injury." John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (citation omitted). "The party seeking a protective order has the burden of showing that good cause exists for issuance of that order." Gambale v. Deutsche Bank AG, 377 F.3d 133, 142 (2d Cir. 2004) (cleaned up); see also DoorDash, Inc., 2024 WL 4589891, at *15-16 (finding that non-party witnesses failed to demonstrate undue burden where they could provide no evidence substantiating claims of commercial harm, competitive disadvantage, or potential retaliation).

B. Application

Mr. Levy and Cammack seek an order terminating the Rule 45 deposition of Mr. Levy.[2] See ECF No. 1; ECF No. 18. The deposition, however, was improperly cut short. Less than an hour into Mr. Levy's deposition, Mr. Dyke indicated that he would adjourn the deposition and move for a protective order after Mr. Rohlf asked one question that Mr. Dyke contended was the subject of the then-pending motion for a protective order in the underlying case. ECF No. 20 at 48-49. Specifically, Mr. Rohlf asked Mr. Levy "[w]ho was in charge of Cammack LaRhette

---

[2] To the extent the motion also seeks to prevent questioning about the eight topics that were the subject of Cammack's motion for a protective order in the underlying case, that aspect of the motion is now moot. The Court entered an order on April 17, 2024, precluding examination on those eight topics. See No. 17-CV-8834, ECF No. 286.

Advisors." Id. at 48:19-20. But rather than posing an objection, allowing Mr. Levy to answer, and permitting Mr. Rohlf to ask additional questions, Mr. Levy indicated that he would adjourn the deposition and move for a protective order. Id. at 49:2-7. That early termination of the deposition was improper.

Under Rule 30(c)(2), "[a]n objection at the time of the examination—whether to evidence, to a party's conduct, . . . to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." Fed. R. Civ. P. 30(c)(2). "[T]he normal practice is to allow a deposition to go forward and have the parties complete as much of it as possible before reaching an impasse. In that way, the parties create a record of where questionable inquiries, objections or assertions of privilege arose and furnish a context for the disputes when a party makes a motion to resolve the dispute (either to compel answers or to enforce privileges and objections)." Am. News & Info. Servs., Inc. v. Rovella, No. 15-CV-1209 (RNC), 2017 WL 3736700, at *6 (D. Conn. Aug. 30, 2017); see also Sanders-Peay v. New York City Dep't of Educ., No. 20-CV-1115 (PKC) (VMS), 2022 WL 16964979, at *3 (E.D.N.Y. Nov. 16, 2022) (explaining that the "general rule for objections during depositions [is] that they be stated on the record, but the question nonetheless be answered") (citation omitted). And under Local Civil Rule 37.3, if a dispute arises during a deposition and it "involves an instruction to the witness not to answer a question, the instruction not to answer may stand and the deposition shall continue until a ruling is obtained." Delgado v. Donald J. Trump for President, Inc., No. 19-CV-11764 (AT) (KHP), 2024 WL 3219809, at *3 (S.D.N.Y. June 28, 2024).

Rule 30 recognizes limited exceptions where counsel may instruct a deponent not to answer a question. Baines, 2016 WL 3042787, at *3. Those exceptions are "1) when refusal is

necessary to preserve a privilege; 2) when a deponent objects to enforce a limitation ordered by a court; and 3) when a deponent moves under Rule 30(d)(3) to terminate or limit the deposition on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent." Id.; see also Fed. R. Civ. P. 30(c)(2). None of those exceptions apply here.

The question asked of Mr. Levy was not in bad faith and nor was it asked to annoy, embarrass or oppress, as required under Rule 30(d)(3). Counsel did not ask Mr. Levy about a personal matter or touch upon a subject area that might lead to embarrassment or harassment for Mr. Levy. See e.g., Baines, 2016 WL 3042787, at *4-5 (concluding that questions inquiring into details of deponent's personal, romantic, and/or sexual relationships prior to relationship with complaining victim were unreasonably annoying, embarrassing, or oppressive); Palm Bay Int'l, Inc., 2009 WL 3757054, at *10-11 (reasoning that questions regarding deponents driving history were harassing); Pressley, 2013 WL 6028316, at *2 (explaining that questions about deponent's living arrangements were asked in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses); see also Van Stelton, 2013 WL 5574566, at *17 (reasoning that although questions about certain topics were of "questionable relevance in light of the surviving claims," they were not "so sensitive or obnoxious that any inquiry into them immediately amounted to bad faith, unreasonable annoyance, etc.").

Mr. Levy's counsel objected to the question because he contended that it touched upon a topic area that was the subject of the then-pending motion for a protective order in the underlying case and was also irrelevant. ECF No. 20 at 49-50. But at the time of Mr. Levy's deposition, the motion had not been decided and thus the topics at issue had not yet been deemed irrelevant to a claim or defense in the case. And, regardless, even if the question asked of Mr. Levy pertained to

an irrelevant topic, "if there is an objection to the question on [relevancy] grounds, the court reporter should note the objection but the examination should proceed." Baines, 2016 WL 3042787, at *3. In other words, even if Mr. Rohlf's question inquiring into who was in charge of Cammack was irrelevant, counsel should have posed an objection and allowed the deposition to continue.

Nor has Mr. Levy shown that it would be unduly burdensome to allow his deposition to proceed now. See Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas, 262 F.R.D. 293, 299 (S.D.N.Y. 2009) (explaining that the moving party "carr[ies] the burden of proving that a subpoena imposes an undue burden on a witness"). Mr. Levy argues that it would be an undue burden to return to the deposition because he already devoted "great time and expense to prepare" once for the deposition and to do so again would be unduly burdensome. ECF No. 18 at 2. But this argument rings hollow because the deposition should not have been cut short in the first place. Any undue burden is thus the result of the improper termination of the first deposition. Moreover, Mr. Levy's counsel repeatedly offered Mr. Rohlf, as a compromise, the opportunity to reconvene for Mr. Levy's deposition at a later time. See e.g., ECF No. 20 at 52:7-21, 53:8-12, 59:4-7, 60:17-19. It would thus be unfair to now entertain complaints that reconvening creates an undue burden.

Mr. Levy also argues that his testimony on issues relevant to Plaintiff's claims against Cammack is cumulative of evidence that Plaintiff has already gathered and is thus not "necessary." ECF No. 18 at 3. Specifically, Mr. Levy and Cammack argue that Mr. Levy's testimony would be duplicative of Jan Rezler's testimony, another non-party employee of Cammack that was already deposed in the underlying case. Id. According to Plaintiff, however, Mr. Levy "has unique personal knowledge of interactions with, and advice given to, the NYU

Defendants that Jan Rezler (a co-advisor from Cammack to the Plans) does not possess." ECF No. 19 at 2. For example, "Mr. Levy was personally involved in negotiating Cammack's agreements with NYU to provide fiduciary consulting services without Mr. Rezler." Id. Further, Mr. Rezler was deposed on February 13, 2024 (see ECF No. 9 at ¶ 14), more than six weeks before Mr. Levy's deposition. If Mr. Levy and Cammack believed that Mr. Levy's testimony would be cumulative of Mr. Rezler's testimony, they could have sought to quash the deposition then.

Finally, Mr. Levy points to a chronic health condition—episodic back pain from surgery—that he says prevents him from sitting comfortably for more than brief periods of time. ECF No. 18 at 3. Mr. Levy's concern can be addressed with periodic breaks or other accommodations during the depositions. It does not, however, prevent him from being deposed.

## CONCLUSION

For the foregoing reasons, the motion by Mr. Levy and Defendant for a protective order terminating the deposition of Mr. Levy is **DENIED**. The Clerk of Court is respectfully directed to terminate the gavel at ECF No. 1.

**SO ORDERED.**

DATED:    New York, New York
          March 24, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge

11